IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| STATE OF WASHINGTON, | ) | No. 33312-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | PUBLISHED OPINION |
| v. | ) | |
| | ) | |
| ERIC DANIEL CRUZ, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Law enforcement need not obtain a warrant prior to conducting a protective vehicle search, so long as there is reasonable suspicion a suspect is dangerous and may gain immediate control of weapons. We are confronted with whether a suspect's potential access to firearms alone satisfies these prerequisites. Under the circumstances presented here, involving a recreational sportsman cited for a fishing violation, we hold it does not. We thus affirm the superior court's order of suppression.

## FACTS

Late one August morning in 2012, Washington Department of Fish and Wildlife officer Troy McCormick was alone on patrol near the Similkameen River. From his vantage point on a cliff above the river, Officer McCormick was able to watch the activities of fishermen below. According to Officer McCormick, there was no cellular service and only a "sketchy" radio signal at a parking lot where most of the fishermen would leave their vehicles or down on the river itself. Report of Proceedings (RP) at 8.

Eric Cruz and a male companion were fishing on the river that morning and caught Officer McCormick's eye. After about a half hour, Officer McCormick saw Mr. Cruz illegally snag[1] a Chinook salmon and pull it from the river. The offense was a gross misdemeanor. Officer McCormick got into his car and drove down to the parking area to make contact with Mr. Cruz.

Officer McCormick found Mr. Cruz by himself, standing near the open door of his truck. He was filling out his catch record card. After a brief interaction, Officer McCormick arrested Mr. Cruz for illegal snagging and placed him in handcuffs. Mr. Cruz was cooperative. Officer McCormick performed a search incident to arrest of Mr.

---

[1] Snagging is a method of fishing that involves catching a fish by use of a hook, but without the hook being baited and the fish taking the bait with their mouth.

Cruz's person. While doing so, he asked Mr. Cruz if he had any firearms on him. Mr. Cruz volunteered that he had firearms in his truck. There was no discussion of what type of firearms were in the truck or whether they were loaded.

Officer McCormick placed Mr. Cruz in his patrol vehicle. As he did so, Mr. Cruz's companion appeared, curious about what was happening. Mr. Cruz's companion was told to stay away from the truck, to which he complied. At no point did Officer McCormick observe Mr. Cruz's companion do anything illegal or engage in any suspicious or obstructive conduct.

With Mr. Cruz secure in the police vehicle and his companion 15-20 feet away, Officer McCormick entered Mr. Cruz's truck and removed three firearms. According to Officer McCormick, he wanted to secure the firearms for the duration of his contact with Mr. Cruz, as he intended to release Mr. Cruz with only a citation. After placing the firearms in his patrol vehicle, Officer McCormick ran Mr. Cruz's name through dispatch. Officer McCormick learned Mr. Cruz had a prior felony conviction and was ineligible to possess firearms. Officer McCormick then retained the firearms as evidence.

The State charged Mr. Cruz with three counts of unlawful possession of a firearm in the second degree. The superior court granted Mr. Cruz's motion to suppress evidence of the firearms and dismissed the charges against Mr. Cruz without prejudice. The State

No. 33312-4-III
*State v. Cruz*

appeals.

## ANALYSIS

Warrantless searches are presumptively unreasonable outside of a few "'jealously and carefully drawn' exceptions." *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 2 L. Ed. 2d 1514 (1979)). The State bears the burden of establishing the applicability of an exception by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). If no exception applies, the fruits of a warrantless search must be suppressed.

As the parties agree, Officer McCormick's seizure of the firearms cannot be justified under the search incident to arrest exception. But this does not end the matter. The search may still be justified if another exception applies. The State suggests the search can be justified as either an officer safety/*Terry*[2] search or an exigent circumstances search. We address each in turn.

*Terry Search*

A *Terry* frisk extends to a car "'if there is a reasonable suspicion that the suspect is dangerous *and* may gain access to a weapon in the vehicle.'" *State v. Glossbrener*, 146 Wn.2d 670, 680-81, 49 P.3d 128 (2002) (emphasis added) (quoting *State v. Terrazas*, 71

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

4

Wn. App. 873, 879, 863 P.2d 75 (1993)). Both components must be present. If either the suspect cannot access a weapon or there is no suspicion of dangerousness, a warrantless vehicle search violates *Terry*.

Officer McCormick's search fails under *Terry* because, despite possible access to firearms, there was no reasonable suspicion Mr. Cruz or his companion were dangerous. The right to bear arms is constitutionally protected. Standing alone, the mere fact an individual possesses firearms does not make him dangerous or justify intrusion into his private space. Context matters. Unless the circumstances suggest a suspect may use firearms to harm himself or others, a vehicle *Terry* frisk is not warranted based simply on the presence of firearms.

There was no indication here of dangerousness. At the time of the search, Mr. Cruz and his companion had just spent the morning fishing. The fact that there were firearms present in this recreational setting was neither surprising nor alarming. Mr. Cruz's law violation did not create any specific safety concerns. He was not under investigation for a crime of violence or other felonious conduct. He was in the process of being cited for a misdemeanor fishing violation. Nothing about these general circumstances suggested a risk to officer or public safety.

The individual circumstances of Mr. Cruz and his companion were likewise

5

benign. Neither man had engaged in any suspicious conduct or made any concerning or furtive movements. Both fully complied with Officer McCormick's instructions. When asked by the State how he felt at the time of the search, Officer McCormick agreed he "didn't feel that [Mr. Cruz] was a danger." RP at 27. These circumstances support the superior court's finding the search was improper.

The authorities cited by the State are inapposite. Both *State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986), and *State v. Larson*, 88 Wn. App. 849, 946 P.2d 1212 (1997), involved vehicle occupants who had made suspicious, furtive movements. Such movements typically provide strong justification for a protective search. *Glossbrener*, 146 Wn.2d at 681-83. *State v. Chang*, 147 Wn. App. 490, 195 P.3d 1008 (2008), involved an individual known to possess a concealed handgun while parked in the lot of a bank as his companion committed a crime inside. This was not an innocuous circumstance. In the context of an ongoing felony investigation, the presence of firearms justifies protective action under *Terry*.

As recognized in the authorities cited by the State, once a firearm is present, not much more is needed to justify a frisk. Had Mr. Cruz or his companion been noncompliant, had they appeared evasive or antagonistic, or had the presence of firearms seemed unusual given the circumstances or time of day, the balance likely would have

6

tipped to favor a protective search. *See State v. Carter*, 151 Wn.2d 118, 123-24, 129, 85 P.3d 887 (2004). But under the facts found by the superior court, Mr. Cruz and his companion were completely cooperative. They posed no more threat than the average sportsmen. To allow a search in this case would mean anyone transporting firearms in a vehicle for sporting purposes would be vulnerable to a law enforcement search. That level of intrusion is incompatible with our constitutional principles.

*Exigent Circumstances*

The State also attempts to justify Officer McCormick's search under the exigent circumstances exception to the warrant requirement. This exception applies where "'obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence.'" *State v. Smith*, 165 Wn.2d 511, 517, 199 P.3d 386 (2009) (quoting *State v. Audley*, 77 Wn. App. 897, 907, 894 P.2d 1359 (1995)). Exigent circumstances involve a true emergency. *State v. Hinshaw*, 149 Wn. App. 747, 753, 205 P.3d 178 (2009) (such as "'an immediate major crisis'" requiring swift action to prevent harm) (quoting *Dorman v. United States*, 140 U.S. App. D.C. 313, 319, 435 F.2d 385 (1970)). Danger to an arresting officer is a potentially exigent circumstance. *State v. Tibbles*, 169 Wn.2d 364, 370, 236 P.3d 885 (2010).

7

The State fails to establish exigent circumstances for the same reasons it cannot establish dangerousness under *Terry*. Exigent circumstances are ones presenting a true potential for an emergency or destruction of evidence. *Tibbles*, 169 Wn.2d at 369-70. No such circumstances were present here. The hypothetical concern that Mr. Cruz or his companion *could* have posed a threat *if* they were dangerous applies to every individual contacted by law enforcement. We agree with the superior court that such generalized concerns are insufficient to permit intruding on an individual's constitutionally protected private space. *Tibbles*, 169 Wn.2d at 372; *State v. Swetz*, 160 Wn. App. 122, 136, 247 P.3d 802 (2011).[3]

## CONCLUSION

Once Officer McCormick learned about the presence of firearms, it was appropriate for him to proceed with caution. But this did not justify a warrantless search. Other less intrusive options were available. Officer McCormick could have asked Mr. Cruz for consent to retrieve and secure the firearms. Alternatively, he may have been able to access Mr. Cruz's keys and lock the vehicle during the citation process. Had Officer McCormick believed Mr. Cruz's companion was too close to the truck, he could

---

[3] Had Officer McCormick sought to impound Mr. Cruz's car, our analysis might well be different. *State v. Duncan*, 185 Wn.2d 430, 441, __ P.3d __ (2016).

have instructed him to stand further away and keep his hands visible. If, during any of these interactions, Officer McCormick developed a suspicion that Mr. Cruz and his companion were being evasive or non-compliant, then he would have had grounds to go further and conduct a protective search.

Our country's freedoms undoubtedly make police work more difficult. Over the years, courts have accommodated law enforcement's safety and investigative needs by crafting several exceptions to the constitution's warrant requirement. However, none of these exceptions extends to generalized safety concerns applicable to interactions with large sectors of the public. Because Officer McCormick's safety concerns were too general, the order of suppression must be affirmed.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

9