**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE NOV 0 2 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 Am on Nov. 2, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 93732-0 |
| Petitioner, | EN BANC |
| v. | NOV 0 2 2017 |
| ERIC DANIEL CRUZ, | Filed _____ |
| Respondent. | |

GORDON McCLOUD, J.—In 2012, Officer Troy McCormick of the Washington State Department of Fish & Wildlife saw Eric Daniel Cruz illegally "snag" a salmon in the Similkameen River. McCormick arrested Cruz for this misdemeanor fishing violation. McCormick also handcuffed Cruz, searched his body, and found no weapons, but further questioned the handcuffed Cruz about whether he had weapons elsewhere. Cruz truthfully acknowledged that he had firearms in his truck. McCormick locked Cruz, who was still handcuffed, in the back of his patrol car and removed three guns from Cruz's truck. McCormick did not have—and never sought—a search warrant. The State subsequently charged

*State v. Cruz (Eric Daniel)*, No. 93732-0

Cruz, who had a prior felony, with three counts of second degree unlawful possession of a firearm.

Cruz moved to suppress the firearms. He argued that *Arizona v. Gant*, 556 U.S. 332, 343, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009),[1] prohibited the search of his truck. The State argued that *Gant* did not provide the applicable rule of law; that *Terry v. Ohio*, 392 U.S. 1, 24, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), as extended to vehicles in *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983),[2] provided the framework for analysis instead; and that those decisions permitted the search. The trial court agreed with Cruz. It ruled that *Gant* controlled, rejected the State's *Terry* and *Long* argument, and suppressed the firearms. It also found that its suppression order effectively "terminate[d] the case," Clerk's Papers (CP) at 7, thus making that order immediately appealable under RAP 2.2(b)(2).

The State then moved to dismiss. The trial court granted that motion and dismissed with prejudice. The State then appealed the suppression order, but not the

---

[1] *Gant* authorizes a warrantless search of a vehicle incident to arrest only if the arrestee is "unsecured and within reaching distance of the passenger compartment at the time of the search." 556 U.S. at 343.

[2] *Terry* held that an officer may conduct a limited protective "frisk" for weapons of a person who has been lawfully stopped if an officer reasonably believes that a suspect is "armed and presently dangerous" based on specific, articulable facts. 392 U.S. at 24. *Long* additionally held that an officer may conduct a limited *Terry* search for weapons in a vehicle if a suspect is armed and dangerous and "may gain immediate control of weapons" in the vehicle. 463 U.S. at 1049.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Cruz (Eric Daniel)*, No. 93732-0

dismissal order. Division Three of the Court of Appeals affirmed. *State v. Cruz*, 195 Wn. App. 120, 380 P.3d 599 (2016).

We granted review, *State v. Cruz*, 187 Wn.2d 1031, 399 P.3d 1104 (2017), to decide whether the rule of *Gant* and *State v. Snapp*, 174 Wn.2d 177, 190-91, 275 P.3d 289 (2012) (concerning the exception to the warrant requirement for a search incident to arrest) controls the outcome; or whether the rule of *Terry* and *Long* (concerning the exception to the warrant requirement for frisks based on individualized suspicion that a suspect is armed and dangerous) controls instead; and how each rule would apply to these facts.

But a procedural issue became apparent after we granted review. We now dismiss for the reasons explained below.

FACTS

On August 10, 2012, Officer McCormick with the Washington Department of Fish & Wildlife Police was out on a solo patrol of the Similkameen River in Okanogan County. McCormick, from up on a cliff, watched Cruz fish for about 30 minutes. During this time, he saw Cruz "snagging," an illegal fishing technique. The officer got in his truck and quickly drove to Cruz's location. It was approximately 10 a.m.

3

Once there, Officer McCormick contacted Cruz and asked to see his fish. Cruz complied, and after examining them, the officer confirmed that the fish had been snagged. McCormick then handcuffed Cruz and informed him that he was under arrest for snagging. McCormick searched Cruz's body incident to arrest and found a small amount of marijuana, but no weapons. He did not have a search warrant, nor did he attempt to get one.

Cruz had been fishing with a companion, "Mr. Rose." McCormick ordered Rose to stay away from Cruz and Cruz's truck. Rose complied and remained 15-20 feet away. McCormick did not detain or restrain Rose in any way, and he did not consider Rose to be a suspect. Cruz also cooperated with all of McCormick's requests.

After handcuffing Cruz and searching his body, McCormick asked Cruz if he had any weapons. Cruz answered that he had guns in his truck. McCormick put Cruz, who was still handcuffed, in his patrol car, locked him in, and went to get the guns out of the truck.[3] When McCormick went to retrieve those guns from Cruz's truck, Cruz "could not access his vehicle to gain immediate control of the weapons." CP at 10 (Finding of Fact (FF) 16). And at that moment, McCormick had no reason

---

[3] According to McCormick's report, he seized three guns from Cruz's truck—"two rifles and a pistol." CP at 31.

4

to believe that these weapons were connected to any criminal activity. His intent at the time was to secure the weapons during the encounter but to return them to Cruz after citing him for illegal fishing and marijuana possession. CP at 11 (FF 19).

After he seized Cruz's guns, Officer McCormick learned that Cruz had a prior felony conviction that made him ineligible to carry firearms. McCormick cited Cruz for the marijuana and for snagging fish and then released him, in accordance with his department's policy. But the officer retained the guns as evidence of the crime of unlawful possession of a firearm. The trial court explicitly found that during this encounter, "there was no evidence presented that Officer McCormick was in danger." *Id.* (FF 24). The trial court made this finding despite the fact that the officer testified that he initially seized the guns "for officer safety and to secure the scene." *Id.* (FF 23).

PROCEDURAL HISTORY

Two years after this encounter, in December 2014, the State charged Cruz with three counts of second degree unlawful possession of a firearm in Okanogan County Superior Court. Cruz moved to suppress the firearms. The court granted the motion, finding that McCormick's warrantless search of Cruz's truck and warrantless seizure of his guns violated *Gant*, the Fourth Amendment, and article I, section 7, and that the search did not meet the criteria for the *Terry* and *Long*

5

exception to the warrant requirement. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7. The court also ruled that its order "terminate[d] the case" against Cruz, CP at 7, thus making that suppression order immediately appealable. RAP 2.2(b)(2).

The State moved to dismiss the case without prejudice that same day; the trial court instead dismissed with prejudice. CP at 4.

The State appealed the suppression order, but not the dismissal order. It argued that the search fit either the exigent circumstances exception or the *Terry* and *Long* exception to the warrant requirement. The Court of Appeals rejected both arguments and held that McCormick's actions violated the Fourth Amendment and article I, section 7. *Cruz*, 195 Wn. App. at 126.

We granted review. *Cruz*, 187 Wn.2d 1031. At oral argument, the parties addressed a possible mootness issue raised by this court. After that argument, the State filed a motion to amend the notice of appeal, pursuant to RAP 5.3(h). A majority of this court granted that motion.

We now dismiss review.

## ANALYSIS

I. The State Failed To Brief and Assign Error to the Trial Court's Decision To Grant the State's Own Motion To Dismiss

We begin with an issue that neither party mentioned in its briefing. On March 26, 2015, the trial court entered its order suppressing evidence. This order included

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Cruz (Eric Daniel)*, No. 93732-0

a handwritten finding that "the practical effect of this order is to terminate the case." CP at 7. Immediately thereafter, the State moved for an order of dismissal without prejudice. The trial court granted dismissal but, according to both its March 26, 2015, written order and the docket entry, it dismissed "with prejudice." CP at 4.

The State appealed from the order of suppression. It did not appeal from the order of dismissal.

RAP 2.2(b)(2) gives the State a right to file an interlocutory appeal from a pretrial order suppressing evidence in a case like this. It states in relevant part,

> [*T*]*he State . . . may appeal* in a criminal case only from the following superior court decisions and only if the appeal will not place the defendant in double jeopardy:
>
> . . . A pretrial order suppressing evidence, *if the trial court expressly finds that the practical effect of the order is to terminate the case.*

RAP 2.2(b)(2) (emphasis added). The superior court made that "express[] find[ing]," so the suppression order was immediately appealable.

But the State then "gratuitously presented the trial court" (in the words of *State v. Fortun*, 94 Wn.2d 754, 755, 626 P.2d 504 (1980) (per curiam)) a motion to dismiss its own case, despite the already appealable suppression order. The trial court dismissed with prejudice.

7

II.     We Have Previously Held, In Virtually Identical Circumstances, That the State's Invitation To Dismiss, Failure To Brief, and Failure To Assign Error to the Invited Dismissal Bars Our Review

We have considered the appealability of suppression orders entered in virtually identical situations on at least three occasions. In *State v. Perry*, 120 Wn.2d 200, 202, 840 P.2d 171 (1992) (per curiam), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 319, 893 P.2d 629 (1995), we dismissed the State's appeal of a suppression order because the State failed to "assign error to the dismissal of the information" that the State itself sought. In *State v. Pam*, 101 Wn.2d 507, 510-11, 680 P.2d 762 (1984), *overruled on other grounds by Olson*, 126 Wn.2d 315, we dismissed the State's appeal of a privilege ruling that gutted the State's habitual offender charges, counts 1 and 2, because the State failed to challenge, brief, or argue the dismissal of the entire case, including count 3; we characterized the State's action as "invited error." And in *Fortun*, 94 Wn.2d at 756-57, we dismissed the State's appeal of a suppression order because the State failed to challenge, brief, or mention the dismissal of the entire case that it sought and obtained.

Indeed, *Fortun*'s procedural posture was identical to the procedural posture of this case. In *Fortun*, the court entered a suppression order that was appealable under RAP 2.2(b)(2). But the State also sought and obtained a dismissal order. On

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

appeal, the State failed to brief or assign error to that dismissal. *Fortun*, 94 Wn.2d at 756. We explained in *Fortun* that even if we ordered reversal of the suppression order, "fundamental common sense compels us to conclude there remains no existing charge to which a possible reversal of a pretrial order could apply" because "the dismissal order would remain unchanged and the case below would still be at an end." *Id.* at 757, 756. We dismissed the appeal. *Id.*

*Pam* was similar. The trial court sustained a defense objection to the prosecutor's questions seeking to elicit attorney-client privileged information. 101 Wn.2d at 510. This privilege ruling gutted two of the State's three charges. The trial court then dismissed its entire information, though not at the State's request. The State then appealed the privilege order, but not the dismissal order that ended its case. The Court of Appeals reversed the trial court's privilege ruling. But we reversed the Court of Appeals. We followed *Fortun* and held that the State's failure to appeal the dismissal—even though the State did not seek that dismissal— amounted to a "waive[r]" of that "claimed error," and even constituted "invited error." *Id.* at 511.

The circumstances in *Perry* were "precisely the same as in *Fortun*," 120 Wn.2d at 202, and as in this case. The trial court suppressed a telephone call that gutted the State's possession with intent to distribute case. *Id.* at 201. The trial court

then dismissed the case, at the State's request. *Id.* at 202. We accepted certification from the Court of Appeals. Three and a half months later, the defendant first "raised the issue of the State's failure to assign error to the order of dismissal." *Id.* We followed *Fortun* and dismissed the case, explaining,

> The State did not assign error to the dismissal of the information. Therefore, *State v. Fortun*, 94 Wn.2d 754, 626 P.2d 504 (1980) mandates dismissal of this case because the circumstances here are precisely the same as in *Fortun*. *See also State v. Pam*, 101 Wn.2d 507, 510-11, 680 P.2d 762 (1984). The State has not asked us to reconsider the holding in *Fortun*, nor offered any policy arguments why *Fortun* should not dictate dismissal. We have not reconsidered *Fortun*. The State only argues that its notice of appeal is from the order of suppression and dismissal. That argument fails to recognize the difference between a notice of appeal and an assignment of error. *See* RAP 10.3(a)(3).

*Perry*, 120 Wn.2d at 202.

The State makes the same attempt in this case that it made in *Perry*. In both cases, "[t]he State's failure to assign error to the order of dismissal" was not raised until after our court accepted review. *Id.* In both cases, the State attempted to correct that problem after review was accepted—in *Perry*, by "argu[ing] that its notice of appeal is from the order of suppression and dismissal," *id.*, and in Cruz's case, by filing a postargument motion to amend the notice of appeal pursuant to RAP 5.3(h) to add in the dismissal order. A majority of the court has voted to grant the State's motion to amend in this case. But it does not change the *Fortun/Pam/Perry* analysis.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

As this court has explained, there are three critical problems with the State's appeal in a situation like this: first, the State failed to assign error to the order of dismissal, in violation of one RAP (RAP 10.3(a)(4)); second, the State failed to brief and argue the propriety of the order of dismissal, in violation of another RAP (RAP 10.3(a)(6)); and third, the State was the party that affirmatively requested—or "invited"—the trial court to enter the dismissal order that it now complains about. Characterizing the "notice of appeal [as being] from the order of suppression and dismissal," as the amended notice of appeal now does, fails to solve these invited error, failure to brief, and failure to assign error problems.

Perhaps tacitly acknowledging this, the State instead relies on a slightly more recent case on a related issue, *Olson*, 126 Wn.2d 315, to bolster its argument. But *Olson* considered the *opposite* situation. In *Olson*, the State lost a suppression motion and then sought and obtained an order of dismissal, but the State subsequently appealed the *dismissal* order—not the *suppression* order. *Id.* at 316-17.

We stated in *Olson* that this was incorrect. *Id.* at 317 n.1. And we speculated that the State made this error because it misread the Rules of Appellate Procedure. *Id.* We adhered to our holdings in *Fortun*, *Pam*, and *Perry*, but distinguished those cases as addressing unappealed dismissal orders. *Olson*, in contrast, involved an

11

unappealed suppression order—and we considered the suppression order to be wrapped up in the dismissal. *Id.* at 323.

That fact distinguishes *Olson* from *Fortun*, *Perry*, *Pam*, and this case. Here, even if we reversed the suppression order, "the case below would still be at an end." *Fortun*, 94 Wn.2d at 756.

III.     There Is No Applicable Exception to the Dismissal Rules of *Pam*, *Perry*, and *Fortun*

The errors described above make it impossible for this court to grant effective relief since the dismissal order ending the State's case is not properly in front of us. "[I]f a court can no longer provide effective relief," then the case is basically moot. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012) (citing *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995)). The general rule is that moot cases should be dismissed. *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

There is an exception: we may retain and decide a moot case "when it can be said that matters of continuing and substantial public interest are involved." *Id.* at 558. We consider three factors in determining whether a case satisfies this exception: "'"[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question."'" *In re Det.*

12

*of M.W.,* 185 Wn.2d 633, 648-49, 374 P.3d 1123 (2016) (alterations in original) (quoting *State v. Hunley,* 175 Wn.2d 901, 907, 287 P.3d 584 (2012) (quoting *In re Pers. Restraint of Mattson,* 166 Wn.2d 730, 736, 214 P.3d 141 (2009))).

To be sure, constitutional questions are public in nature. *State v. Beaver,* 184 Wn.2d 321, 331, 358 P.3d 385 (2015) (citing *Hunley,* 175 Wn.2d at 907). And this case presents Fourth Amendment and article I, section 7 issues. But *Pam, Perry,* and *Fortun* show that the existence of such constitutional issues alone does not excuse the invited error, failure to assign error (RAP 10.3(a)(4)), failure to brief (RAP 10.3(a)(6)), and potential mootness problems.

We therefore dismiss review.

CONCLUSION

We reaffirm the rules of *Pam, Perry,* and *Fortun.* Review is dismissed.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Cruz (Eric Daniel)*, No. 93732-0

_____
George McCloud, J.

WE CONCUR:

_____
Fairhurst, C.J.

_____
Stephens, J.

_____
Johnson, J.

_____
Wiggins, J.

_____
Madsen, J.

_____
González, J.

_____
Owens, J.

_____
Yu, J.

14