IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39665-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| LENO SABALSA HOWARD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Leno Howard appeals his convictions for drive-by shooting and unlawful possession of a firearm in the first degree. He argues the trial court erred in denying his motion to suppress evidence of the handgun found by a deputy during a warrantless search of his car.

Howard's argument hinges on the notion that *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), a decision discussing the search incident to arrest exception to the warrant requirement, implicitly overruled previous decisions that allow an officer, when conducting a *Terry v. Ohio*[1] investigation, to conduct a warrantless frisk of an unoccupied vehicle if reasonable for officer safety concerns.

---

[1] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Because these two exceptions to the warrant requirement have different purposes,

and because investigative stops present officer safety concerns that do not arise when an

officer arrests a suspect, we conclude that *Gant* did not alter the rule permitting vehicle

searches when reasonable for officer safety. We affirm the trial court's denial of

Howard's motion to suppress.

## FACTS[2]

Sheriff's Deputy Mike Russell responded to a trespassing report at a farm. As he

entered the farm's long dirt driveway, the deputy saw a Pontiac sedan turn around and

head toward him from the house. As the vehicles reached each other, the deputy lowered

his window and asked the Pontiac's driver if everything was all right. The driver, later

identified as Leno Howard, responded that he had just picked up his two passengers, a

man and a woman, and they were now leaving.

Around this time, Deputy Russell heard from dispatch that the 911 caller who had

reported the trespass claimed to be at the house, and that shots had been fired. When the

deputy asked Howard if he was aware of any shooting, Howard attributed the shots to

nearby hunters. Dispatch then reported that the 911 caller could see the deputy speaking

with the driver. The caller claimed that the driver had fired the shots.

---

[2] These facts come from the trial court's CrR 3.6(b) findings, which Howard does
not contest.

Deputy Russell immediately exited his vehicle and directed the Pontiac's three occupants to put their hands in the air. They complied. The deputy asked if there was a firearm in the car, and Howard said no. Deputy Russell looked inside the car and did not see any firearms, but did see a large axe. The occupants kept their hands raised, and the deputy waited with his hand on his holstered gun until a second deputy arrived.

Deputy Russell then explained to Howard and his passengers that someone had reported that they were involved in a shooting. Howard and the male passenger were directed, one at a time, to get out of the Pontiac to be frisked. The female passenger was directed to get out of the car, and all three individuals stood beside the second deputy, about 10 feet from the Pontiac. At the time, three of the four Pontiac doors were open, and none of the detainees were handcuffed.

Deputy Russell believed that a gun could be easily concealed in the car and, if produced during a confrontation, would present a mortal threat. He decided to check the Pontiac for a concealed gun. After about one minute, he found a handgun in the backseat, hidden under a shirt and case of soda pop. Deputy Russell did not touch or move the gun, and left it on the back seat. Around this time, a third deputy arrived. Howard and the other male detainee were handcuffed due to safety concerns. Deputy Russell then left the group and drove up the driveway to obtain information from the 911 caller. The investigation led to Howard's arrest.

3

The State charged Howard with two counts of assault, one count of drive-by shooting, and one count of unlawful possession of a firearm in the first degree. Before trial, Howard filed a CrR 3.6 motion to suppress evidence of the gun. After an evidentiary hearing, the trial court denied Howard's motion, and upheld the warrantless search of his Pontiac under the officer safety exception applicable to *Terry* investigations.

A jury acquitted Howard of both assault charges, but convicted him of the remaining charges. In addition to a standard range sentence and nominal restitution, the trial court imposed a $500 victim penalty assessment (VPA). Howard timely appeals.

## LAW AND ANALYSIS

### *TERRY* INVESTIGATIVE STOP EXCEPTION

Howard argues he is entitled to a new trial because the trial court erred in denying his motion to suppress the gun discovered during a warrantless search of his car. We disagree.

Under the Fourth Amendment to the United States Constitution, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Under article I, section 7 of the Washington Constitution, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The phrase "private affairs" includes automobiles and their contents. *State v. Kennedy*, 107 Wn.2d 1, 4-5, 726 P.2d 445 (1986). "It is well

4

established that article I, section 7 is qualitatively different from the Fourth Amendment and provides greater protections." *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014).

"The 'authority of law' required by article I, section 7 is a valid warrant unless the State shows that a search or seizure falls within one of the jealously guarded and carefully drawn exceptions to the warrant requirement." *Id.* at 868-69. "Exceptions to the warrant requirement fall into several broad categories: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view, and *Terry* investigative stops." *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999) (footnote omitted). The State bears the burden of establishing one of these exceptions by clear and convincing evidence. *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009). "If no exception applies, the fruits of a warrantless search must be suppressed." *State v. Cruz*, 195 Wn. App. 120, 123, 380 P.3d 599 (2016), *review granted and dismissed*, 189 Wn.2d 588 (2017).

When an officer conducts an investigative stop of a vehicle, that officer may, under certain circumstances, frisk the driver of the vehicle to ensure officer safety. *Terry*, 392 U.S. at 30. "Less than probable cause is required because the stop is significantly less intrusive than an arrest." *Kennedy*, 107 Wn.2d at 6. In *Michigan v. Long*, 463 U.S.

1032, 1051-52, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983), the United States Supreme

Court extended *Terry* searches of a person to searches of the vehicle itself:

> During any investigative detention, the suspect is in the control of the officers in the sense that he may be briefly detained against his will. Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in [the defendant]'s position break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation at close range, when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger.

(Internal quotation marks and citations omitted.) Because of these considerations,

"A police officer may extend his 'frisk' for weapons into the passenger compartment of

the vehicle if he has a 'reasonable suspicion that the suspect is dangerous and may gain

access to a weapon in the vehicle.'" *State v. Smith*, 115 Wn.2d 775, 785, 801 P.2d 975

(1990) (quoting *State v. Williams*, 102 Wn.2d 733, 738-39, 689 P.2d 1065 (1984)).

These same considerations may sometimes permit a frisk of a vehicle even if the

driver and passengers have been temporarily removed from it:

> [Our precedent does] not limit an officer's ability to search the passenger compartment of a vehicle based on officer safety concerns only to situations in which either the driver or passenger remain in the vehicle. Instead, a court should evaluate the entire circumstances of the traffic stop in determining whether the search was reasonably based on officer safety concerns.

*State v. Glossbrener*, 146 Wn.2d 670, 679, 49 P.3d 128 (2002).

Here, once Howard and his passengers exited the Pontiac, the next step of Deputy Russell's investigation was to talk with the 911 caller, who was near the house at the end of the long driveway. The 911 caller had reported that the Pontiac's driver had shot at him, and, if this was true, the gun almost certainly remained in the car. Deputy Russell knew that once he drove down the driveway to speak with the caller, the second deputy would be left alone with a reported shooter and two trespassers likely in close proximity to a gun. Given this context, we conclude that Deputy Russell's warrantless car frisk was reasonably based on officer safety concerns.

Howard argues that *Gant* casts doubt on *Long* and authorities citing it, and that warrantless car searches no longer are permitted once a suspect and their passengers have been removed from the car. We disagree.

In *Gant*, the vehicle frisk occurred after the defendant was arrested, handcuffed, and locked in the back of a patrol car. 556 U.S. at 335. The court held that the search violated the Fourth Amendment and reaffirmed that "police may search incident to arrest

7

only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" *Id.* (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969)). In reaffirming this rule, the court expressly confirmed it was not altering the rule in *Long*:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." *Id.*, at 1049, 103 S. Ct. 3469 (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

*Id.* at 346-47.

In his concurring opinion, Justice Scalia also emphasized that the court had not altered the rule in *Long*:

> It must be borne in mind that we are speaking here only of a rule automatically permitting a search when the driver or an occupant is arrested. Where no arrest is made, we have held that officers may search the car if they reasonably believe "the suspect is dangerous and . . . may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). In the no-arrest case, the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed. The rule of *Michigan v. Long* is not at issue here.

*Id.* at 352 (Scalia, J., concurring).

No. 39665-7-III
*State v. Howard*

In short, *Gant* did not alter *Long*. An officer may still conduct a warrantless frisk of an unoccupied vehicle when there are reasonable officer safety concerns due to the possibility that an occupant will return to the vehicle.

VICTIM PENALTY ASSESSMENT

Howard argues the trial court erred by imposing the $500 VPA. The State agrees that remand is required for the trial court to strike the assessment due to an intervening change in law. We accept the State's concession and remand for this purpose.

Affirmed, but remanded to strike the $500 VPA.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Staab, J.

9